Filed 4/13/26  P. v. Redix CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B342664 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA044579) |
| v. | |
| ANTHONY REDIX, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Dorothy L. Shubin, Judge.  Affirmed.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

In 2008, at the age of 31, Anthony Redix pleaded no contest to robbery, forcible rape, and other sex crimes that he committed when he was 17 years old. The trial court sentenced him to a determinate sentence of 40 years in prison. In 2024, Redix filed a petition under Penal Code section 1170, subdivision (d)(1) (section 1170(d)(1)),[1] which allows juvenile offenders to petition for recall and resentencing after 15 years of incarceration if they were sentenced to life without the possibility of parole (LWOP). The court denied Redix's petition, finding he was ineligible for relief because he was not sentenced to LWOP and a determinate sentence of 40 years is not the functional equivalent of LWOP. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1994 Redix and three other men entered a home in Pasadena armed with handguns.[2] The men assaulted and bound a man and herded his daughter and her nanny into a bedroom. The men then sexually assaulted the man's wife, ransacked the home, and stole the family car. Redix was 17 at the time (born May 31, 1977).

Almost 10 years later, an informant identified Redix as one of the perpetrators. (See *People v. Redix* (Apr. 20, 2010, B210341) 2010 WL 1544819, at *1 [nonpub. opn.].) The police obtained a DNA sample from a paper coffee cup that Redix had thrown away and determined it matched samples from the crime scene. (*Ibid.*)

---

[1]     Statutory references are to the Penal Code.

[2]     Unless otherwise stated, we draw the facts from the probation report.

In July 2008 Redix pleaded no contest to two counts of home invasion robbery while acting in concert (§§ 211, 213(a)(1)(A); counts 1 & 2), three counts of forcible rape while acting in concert (§ 264.1; counts 4, 7 & 8), two counts of forcible sodomy while acting in concert (§ 286, subd. (d); counts 5 & 10), forcible oral copulation while acting in concert (§ 288a, subd. (d); count 6), anal and genital penetration with a foreign object (§ 289, subd. (a); count 9), and two counts of assault with a firearm (§ 245, subd. (a)(2); counts 11 & 12). Redix also admitted as to count 1 that he personally used a firearm (§ 12022.5, subd. (a)), and as to counts 2, 4, 5, 6, and 7 that he used a firearm in the commission of a sexual offense (§ 12022.3, subd. (a)).[3]

On August 15, 2008, when Redix was 31 years old, the trial court sentenced him to an aggregate term of 40 years in prison, comprised of: the upper term of nine years plus 10 years consecutive for the gun enhancement for count 1 (robbery); a consecutive term of two years plus one year for the gun enhancement for count 2 (robbery); a consecutive term of two years four months, plus one year for the gun enhancement each for counts 4 (forcible rape in concert) and 5 (sodomy by force in concert); a consecutive term of two years four months each for counts 6 (oral copulation by force in concert), 7 (forcible rape in concert), 8 (same), and 10 (sodomy by force in concert); and a consecutive term of two years for count 9 (penetration by foreign object). The court awarded 940 days of presentence custody credit—818 days of confinement credit and 122 days of conduct credit.

---

[3] At sentencing, the People moved to strike the admission of the enhancement as to counts 6 and 7.

Redix appealed his sentence, and we affirmed. (*People v. Redix, supra,* B210341.)

On March 6, 2024, Redix filed a motion to recall his sentence under section 1170(d)(1). He asserted that based on equal protection principles, *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*) had extended the statutory right to relief under section 1170(d)(1) to juvenile offenders sentenced to the functional equivalent of LWOP, and he further contended his 40-year determinate sentence was the functional equivalent of LWOP.

The court denied the motion. The court stated, "[T]his is not a life sentence. I haven't seen any . . . cases with determinate sentences, saying they are the functional equivalent of LWOP. . . . So the sentence in this case is distinct[] from those indeterminate sentences, and therefore is not the functional equivalent of LWOP."

Redix timely appealed.

## DISCUSSION

Section 1170(d)(1) provides, "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170(d)(1)(A).) On its face, section 1170(d)(1) "applies to juvenile offenders sentenced to life without the possibility of parole; it does not apply to any other group of defendants." (*People v. Munoz* (2025) 110 Cal.App.5th 499, 507, review granted June 25, 2025, S290828 (*Munoz*); see *People v. Superior Court* (*Valdez*) (2025)

4

108 Cal.App.5th 791, 800 (*Valdez*) ["[b]y its terms," section 1170(d)(1) limits relief to juvenile offenders sentenced to LWOP].) Even though Redix was sentenced to a 40-year determinate term, not LWOP, he contends that based on the guarantees of equal protection, he has the right to petition for the same relief under section 1170(d)(1) as a juvenile offender sentenced to LWOP.

In evaluating an equal protection challenge to a statute that distinguishes between different groups of individuals, unless a suspect classification or a fundamental right is involved, courts apply the deferential "rational basis" standard, under which "we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' " (*People v. Hardin* (2024) 15 Cal.5th 834, 852.) " 'If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " ' " (*Ibid.*)

Redix contends his sentence of 40 years is the functional equivalent of LWOP and thus he is entitled under equal protection guarantees to the opportunity to petition for resentencing under section 1170(d)(1). He chiefly relies on *Heard*, in which the court held that "there is no rational basis for making juvenile offenders sentenced to explicit terms of life without parole eligible for resentencing under section 1170, subdivision (d)(1), while denying the same opportunity to juvenile offenders sentenced to terms that amount to the functional equivalent of life without parole." (*Heard, supra*, 83 Cal.App.5th at p. 631.) The court held that "denying juvenile offenders, who were sentenced to the functional equivalent of [LWOP], the opportunity to petition for resentencing [under section 1170(d)(1)] violates the guarantee of equal protection." (*Heard*, at p. 612; see also *People v. Sorto* (2024) 104 Cal.App.5th 435, 454 (*Sorto*)

5

[agreeing with *Heard* and concluding there is no rational basis to treat differently "explicit LWOP offenders and functionally equivalent LWOP offenders" and thus § 1170(d)(1) "violates the constitutional guarantee of equal protection by denying relief to juvenile offenders sentenced to functionally equivalent LWOP terms"].)

In *Munoz*, a majority of this court rejected the argument that, under the reasoning of *Heard* and *Sorto*, a 50-years-to-life sentence for a 16-year-old juvenile homicide offender is the functional equivalent of LWOP for purposes of eligibility for relief under section 1170(d)(1).  (See *Munoz*, *supra*, 110 Cal.App.5th at pp. 507-508, review granted.)  We held that such a sentence is "quantitatively different" from the sentences in *Heard* and *Sorto* that had minimum parole eligibility dates much greater than 50 years.  (*Munoz*, at p. 508.)  In *Heard*, the juvenile offender was serving a sentence of 23 years plus 80 years to life (*Heard*, *supra*, 83 Cal.App.5th at p. 629), and in *Sorto*, the juvenile was sentenced to 10 years, plus 130 years to life (*Sorto*, *supra*, 104 Cal.App.5th at p. 440).  The offenders in *Heard* and *Sorto* were certain to die in prison, while the juvenile sentenced in *Munoz* would become eligible for parole at age 66; we concluded that juvenile offender had a " ' "realistic opportunity to obtain release" from prison during his . . . expected lifetime.' " (*Munoz*, at p. 508.)  Thus, we concluded a juvenile homicide offender sentenced to 50 years to life is not entitled under equal protection principles to seek relief under section 1170(d)(1).  (*Munoz*, at p. 508; accord, *People v. Thompson* (2025) 112 Cal.App.5th 1058, review granted September 24, 2025, S292540 [§ 1170(d)(1) does not violate equal protection by excluding a juvenile homicide offender sentenced to 50 years to life]; but see *People v. Cabrera*

(2025) 111 Cal.App.5th 650, 653 [concluding 50-years-to-life sentence was the functional equivalent of LWOP for purposes of relief under § 1170(d)(1)]; *Munoz*, at p. 513 (dis. opn. of Feuer, J.).

Although there is disagreement among the Courts of Appeal regarding whether a juvenile sentenced to 50 years to life should be eligible to file a petition under section 1170(d)(1), no California court has concluded that a juvenile sentenced to 40 years in prison is eligible for such relief.[4] In *People v. Baldwin* (2025) 113 Cal.App.5th 978, review denied November 25, 2025, the Court of Appeal held a juvenile non-homicide offender sentenced to 44 years to life sentence is not eligible for relief under section 1170(d)(1). (*Baldwin*, at p. 985.) The court distinguished *Heard* and *Sorto* and held those decisions did not "confront[] how functional equivalence should be assessed when a defendant's term-of-years sentence could potentially offer a parole opportunity *inside* the juvenile's natural life." (*Baldwin*, at p. 994.) The court also concluded "[t]he Legislature could rationally determine that 'providing the relatively small number of juvenile offenders otherwise certain to die in prison an opportunity to obtain a lesser sentence was the most pressing priority.' [Citation.] While this excludes juveniles with lengthy term-of-years sentences that do not guarantee their death in prison, the Legislature is 'entitled to proceed incrementally, so long as it proceeds rationally, in "walking [the] tightrope" of the political process.'" (*Id.* at p. 1005.) Thus, the court determined the juvenile offender had "failed to demonstrate. . . that section

---

[4] Nor has Redix cited any cases that apply the logic of *Heard* and *Sorto* to a determinate sentence of any length and conclude the guarantees of equal protection require affording a defendant the right to petition for relief under section 1170(d)(1).

1170(d)'s limitation on eligibility to those sentenced to LWOP has no rational basis, and is therefore unconstitutional under the Fourteenth Amendment, as applied to juvenile nonhomicide offenders sentenced to 44 years to life." (*Id.* at p. 985.)

We conclude an individual sentenced to a determinate term of 40 years for a crime committed as a juvenile is not serving the functional equivalent of LWOP, even assuming he or she is not paroled earlier under section 3051 or section 3055.[5] (*Munoz, supra*, 110 Cal.App.5th at p. 508.) Had Redix not managed to avoid being identified and apprehended for 10 years, he would have been eligible for parole by around age 57. A juvenile offender eligible for parole at age 57 is not the functional equivalent of a juvenile sentenced to LWOP, and the Legislature could rationally treat the two differently.

Redix now attempts to use to his advantage the fact that he was able to escape justice for those 10 years, arguing that assuming he serves his full 40-year sentence, he will be 71 years

---

[5] Redix was first eligible for parole in 2023, his 15th year of incarceration, under section 3051, which requires parole hearings for most youth offenders incarcerated for crimes they committed before the age of 25. (§ 3051, subd. (b)(1).) Redix is also eligible for consideration for elderly parole under section 3055 when he turns 50, in 2027. (§ 3055, subd. (a).) The People maintain Redix has already had several parole hearings. Because we conclude Redix's sentence is not the functional equivalent of LWOP, we need not examine whether his immediate or imminent parole eligibility under either section 3051 or section 3055 renders him ineligible for relief under section 1170(d)(1).

old before he completes his prison term,[6] increasing the chance that he will die in prison rather than have "time to establish life outside of prison." However, someone in Redix's circumstances is not the functional equivalent of a juvenile offender who is serving an LWOP sentence, and we conclude the Legislature rationally could distinguish between juveniles who will never experience life as an adult outside of prison from those who were able to live free outside of prison for a decade as an adult before being apprehended. The lengthy period of time that elapsed before Redix was brought to justice does not convert his 40-year determinate sentence into the functional equivalent of LWOP.

In sum, the guarantees of equal protection do not afford Redix the right to petition for section 1170(d)(1) relief.

## DISPOSITION

The order denying Redix's section 1170(d)(1) petition is affirmed.

STONE, J.

We concur:

MARTINEZ, P. J.    FEUER, J.

---

[6] In fact, given his 940 days of presentence credit, but not estimating post-sentence conduct credit or factoring in other opportunities for parole, Redix will be released no later than age 68.